UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GINA V.,<br><br>    Plaintiff,<br><br> v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 20 C 4009<br><br>Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

  Plaintiff Gina V.[1] seeks judicial review of the final decision of the Acting Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). Gina asks the Court to reverse and remand the administrative law judge's ("ALJ") decision, and the Commissioner moves for its affirmance. For the following reasons, the Court affirms the ALJ's decision.

**BACKGROUND**

  In January 2016, Gina suffered a concussion after she was hit in the head by a hockey puck at a minor league hockey game. (R. 486, 551). On August 15, 2017, Gina applied for disability insurance benefits at age 49, alleging disability since September 2, 2016 due to post-concussion syndrome and Sjogren's Syndrome. *Id.* at 63-64. Prior to her alleged onset date, Gina worked as a chief accounting officer at a manufacturing company. *Id.* at 185. As a result of her concussion, Gina experienced headaches, photophobia, phonophobia, nausea, noise sensitivity, balance trouble, and cognitive issues. *Id.* at 486. Her symptoms worsen with over-exertion, and she was

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

ultimately unable to keep doing her job. *Id.* at 502, 575. Gina's symptoms were treated with medication and physical therapy. *Id.* at 313, 639, 696, 700. Also, Gina received treatment in the neurology department of the Mayo Clinic, where she underwent a comprehensive neurological examination. *Id.* at 696-708.

On June 24, 2019, the ALJ issued a decision denying Gina's application for disability benefits. *Id.* at 13-23. The opinion followed the required five-step evaluation process. 20 C.F.R. § 404.1520. At step one, the ALJ found that Gina had not engaged in substantial gainful activity since September 2, 2016, the alleged onset date. *Id.* at 15. At step two, the ALJ found that Gina had the severe impairments of traumatic brain injury and neurocognitive disorders. *Id.* At step three, the ALJ determined that Gina did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). *Id.* at 16.

The ALJ then concluded that Gina retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Gina can: lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours out of an 8 hour workday and stand and/or walk for 6 hours out of an 8-hour workday; understand, remember and carry out simple and detailed tasks with no fast-paced tasks; and adapt to routine changes in a work environment. *Id.* at 17. As a result of the RFC finding, the ALJ determined at step four that Gina could not perform any of her past relevant work. *Id.* at 21. However, at step 5 the ALJ found that Gina had the RFC to perform occupations such as cashier, sales attendant, and hotel housekeeper. *Id.* at 22-23. Because of this determination, the ALJ found that Gina was not disabled. *Id.* at 23. The Appeals Council denied Gina's request for review on May 11, 2020, leaving the ALJ's

decision as the final decision of the Commissioner. *Id.* at 1; *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020).

## **DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 (7th Cir. 1985). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162.

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Furthermore, the Court may not "reweigh

evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the" ALJ's. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Nonetheless, where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of her request for reversal and remand, Gina makes two arguments: (1) the ALJ's assessment of the medical opinion evidence is unsupportable and premised on impermissible inferences; and (2) the ALJ failed to consider Gina's limitations arising out of the combination of her impairments in the RFC analysis. Because the ALJ's decision is supported by more than a mere scintilla of evidence and a reasonable mind can accept this evidence as adequate to support the conclusion, the Court affirms.

A.  **Medical Opinion Evidence**

Gina challenges the ALJ's evaluation of her treating doctors' medical opinions, the non-examining State agency consultants' opinions, and a consultive psychological examiner's opinion. Gina submitted medical opinion evidence from two of her treating physicians: Drs. Steven Eisenstein and James Castle. Both completed an RFC statement. (R. 969-976). Gina also submitted a psychological evaluation from a psychologist, Dr. Grant Boyer. The ALJ determined that the medical opinions were unpersuasive.

Given Gina's filing date, the ALJ's evaluation of the medical opinion evidence was subject to new regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is only required to articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The

regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c).  Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a).  An ALJ must explain how he considered the factors of supportability and consistency in his decision, but he is not required to explain how he considered the other factors. 20 C.F.R. § 404.1520c(b)(2).  In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." *Id* at C.F.R. § 404.1520c(c)(1).  As to consistency, "[t]he more consistent a medical opinion ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." *Id.* at C.F.R. § 404.1520c(c)(2).

    **1. Treater Opinions of Drs. Steven Eisenstein and James Castle**

Regarding the treater medical opinions of Drs. Steven Eisenstein and James Castle, Gina primarily argues that the ALJ erred in his analysis because he employed the same rationale in finding the two opinions unpersuasive.  Before addressing Gina's argument further, the Court notes that that the basis for Gina's argument is unclear and she does not provide any authority to support her position. *See Roth v. Berryhill*, No. 17 C 50196, 2018 WL 6100904, at *4 (N.D. Ill. Nov. 21, 2018) (noting that the claimant merely presented a long list of evidence from the record, without "providing any analysis, arguments, or case law to support her position that the ALJ's decision required remand.").  Nevertheless, the Court finds no error in the ALJ's evaluation of Drs. Steven Eisenstein's and James Castle's medical opinions.  The ALJ sufficiently considered their supportability and consistency and minimally articulated his reasoning.

5

Dr. Eisenstein has been Gina's primary care physician for over twenty years. (R. 904). He completed an RFC statement on January 3, 2019. *Id.* at 973-976. In this form, Dr. Eisenstein: (1) listed Gina's diagnosis as post-concussion syndrome, insomnia, and headache disorder with symptoms of poor concentration, headache, fatigue, photosensitivity, hyperacusis, tinnitus, and dizzy when tired; (2) noted that her prognosis was fair; (3) determined that Gina can stand and walk only for about an hour in an eight hour work day, sit for eight hours, and occasionally lift more than ten pounds; and (4) predicted that Gina would need to lie down one to three hours during breaks, take one to two unscheduled breaks, and be off task more than thirty percent of the time. *Id.*

Dr. James Castle is a neurologist that Gina started seeing in February 2016, after her hockey puck accident. Dr. Castle completed an RFC statement on December 20, 2018. *Id.* at 969-972. In this form, Dr. Castle: (1) listed Gina's diagnosis as post-concussion syndrome with symptoms of headaches, cognitive trouble, fatigue, photophobia, phonophobia, hyperacusis, and balance issues; (2) noted that her prognosis was poor; (3) determined that Gina can stand and walk for less than an hour, sit for less than an hour, and rarely lift more than five pounds; and (4) predicted that Gina would need unscheduled breaks every five minutes, need to rest three hours before returning to work, and be off task more than thirty percent of the time. *Id.*

The ALJ found both Drs. Steven Eisenstein's and James Castle's opinions not persuasive due to a lack of support or consistency with the overall record. (R. 20). In his analysis of both treater opinions, the ALJ considered that the record only showed occasional instances of dizziness, headaches, an ataxic gait pattern, mild difficulty with toe walk, and mild imbalance when standing on one foot with the eyes closed. *Id.* Also, the ALJ considered that Gina's overall neurological examination were normal and unremarkable, that her objective examinations showed mild

findings, and that the record did not show any motor or muscle weakness. *Id.* Finally, the ALJ noted that Gina's headaches improved with treatment.

Gina is correct that the ALJ listed the same record evidence in finding that both treater opinions were unpersuasive. However, Gina is incorrect that the ALJ's rationale is unsupported by the record. The Court also reads the ALJ's decision as a whole, and when read in totality, it demonstrates that the ALJ's decision is supported by more than a scintilla of evidence. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004); *Winsted v. Berryhill,* 923 F.3d 472, 478 (7th Cir. 2019). First, the ALJ sufficiently supported his statement that "the record shows occasional instances of dizziness, headaches, an ataxic gait pattern, mild difficulty with toe walk, and mild imbalance when standing on one foot with the eyes closed." (R. 20). In support of that statement, the ALJ cited to a 2016 physical therapy evaluation where Gina complained of dizziness. *Id.* at 19, 313. The ALJ also cited to a 2017 internal medicine consultive examination noting Gina's mild difficulty with toe walk, and two 2018 progress notes from Dr. Castle noting that a gait test revealed some imbalance when Gina stood with one foot out front, and eyes closed. *Id.* 19, 734, 803, 999. The ALJ then noted a February 2018 progress note stating that Gina still experienced occasional headaches and dizziness if she exerted herself. *Id.* at 19, 980. Next, the ALJ referenced a June 2018 progress note from Dr. Castle indicating that Gina's memory, cognitive issues, fatigue, headache, and balance issues exacerbate when she overdoes activity. *Id.* at 19, 996.

Second, the ALJ sufficiently supported his statement that Gina's "overall neurological examinations are normal and unremarkable," that her "objective examinations showed mild findings," and that "the record did not show any motor or muscle weakness." (R. 20). In support of this statement, the ALJ considered a 2016 physical exam which states that Gina was alert, with a normal gait, and had five out of five strengths of her extremities, grip, and joints. *Id.* at 19, 290.

Next, the ALJ again cited to a 2017 internal medicine consultive examination noting that Gina's gait was normal, her grip strength was five out of five, her motor exam was normal, and her extremity strength was a five out of five. *Id.* at 19, 734. The 2017 evaluation also indicated that Gina was alert and oriented, that her remote memory appeared to be intact, and that during the exam she displayed a normal range of reasoning, comprehension, and concentration. *Id*. at 734. The ALJ then considered a 2018 progress note stating that Gina was in good spirits with normal speech and language, that her cognition, coordination, and gait were normal, and that she had no weakness. *Id.* at 19, 981. The ALJ also cited to a June 2018 progress note from Dr. Castle, stating that Gina's symptoms of memory loss, cognitive issues, headaches, photo and phonophobia were worsened when she overdoes activity. *Id.* at 19, 996. The ALJ also considered a July 2018 exam by Dr. Eisenstein indicating that Gina was alert and oriented with subjective dizziness. *Id.* at 19, 1011. Further, the ALJ considered a December 2018 progress note by Dr. Castle indicating a normal examination of Gina's mental status, cranial nerves, motor, and gait. *Id.* 19, 1050. That progress note also stated that Gina should continue with light activity and no work.[2] *Id*. Finally, the ALJ, considered a February 2018 progress note indicating that Gina's headaches were improving. *Id.* at 980. Thus, the ALJ's analysis of the treater opinions is sufficiently explained as to supportability and consistency, and in sum, the ALJ found that the treater opinions were unpersuasive with the record as a whole. That the ALJ considered the same record evidence in its

---

[2] In the treater opinion section of Gina's argument, she specifically points to Dr. Castle's recommendation that Gina refrain from work. Doc. [14] at 9. However, a claimant "is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *see Ray v. Saul*, 861 F. App'x 102, 105 (7th Cir. 2021) ("The ALJ found that Dr. Zaragoza went too far by offering an opinion on the ultimate issue—whether Ray was disabled during the relevant period, a question reserved for the Commissioner.").

analysis of the treater opinions does not diminish the ALJ's thorough articulation. As such, the Court finds no error in the ALJ's evaluation of the treater opinions.

### 2. State Agency Psychological Consultants and Dr. Boyer

Turning to the psychological opinions, the State agency consultants Dr. David Voss and Dr. Michael Schneider both opined that Gina had mild limitations in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace. (R. 21). Further, the State agency consultants determined that Gina had no limitation to interact with others and to adapt or manage oneself. *Id.* Ultimately the State agency consultants found that Gina's mental impairments were non-severe. *Id.* The ALJ found the State agency consultants' opinions unpersuasive because of a lack in consistency and support with the overall record, and because the records submitted at the hearing level supported the need for additional limitations. *Id.*

Dr. Boyer concluded that Gina had a moderate to extreme limitation to understand, remember, and carry out instructions. *Id.* at 21. He also found that Gina had a mild to marked limitation to interact and relate with others. *Id*. The ALJ found Dr. Boyer's opinion unpersuasive because of lack in consistency and support with the overall record, and because Dr. Boyer based his opinion on Gina's subjective reports. *Id.* Further, in his evaluation of the State agency consultants and Dr. Boyer, the ALJ considered that "apart from difficulty with memory retrieval, Gina's overall mental examinations were normal and unremarkable," that "a 2016 psychometric evaluation in November 2016 was normal and unremarkable," and that Gina's "cognitive issues worsen with overstimulation or with increased activities." *Id*.

Gina suggests that it was illogical for the ALJ to utilize the same reasoning in his analysis of the State agency opinions (that found Gina has only mild limitations) and Dr. Boyer's opinion

9

(that found Gina is more aggressively limited). Doc. [14] at 10. Again here, Gina does not provide any authority in support of her argument and does not consider the totality of the ALJ's analysis.

Like with the ALJ's analysis of Gina's treaters, the ALJ used the same record evidence and rationale in finding the three psychological opinions unpersuasive. The ALJ also explained the record evidence he considered in more detail in the prior paragraphs on page nineteen of his decision. The Court has no quarrel with the ALJ's analysis because the ALJ minimally articulated his reasoning and the decision is supported by more than a mere scintilla of evidence.

First, in support of the ALJ's statement that "apart from difficulty with memory retrieval, Gina's overall mental examinations were normal and unremarkable," the ALJ considered Dr. Boyer's note from a February 2019 evaluation that Gina's speech was clear, related and goal directed, and that her thought processes were intact. *Id.* at 19, 21, 1078. That 2019 note also stated that some of Gina's memory retrieval was difficult, and that she was tangential at times. *Id*. The ALJ also considered a 2017 Mayo Clinic note stating that Gina's mood and affect were normal and that she was oriented to person, place, and time. *Id.* at 19, 715. The ALJ next considered a 2017 psychological evaluation indicating that Gina had adequate hygiene and grooming, that her mood was appropriate, that Gina was oriented to person, place, and time, that she correctly stated her date of birth and address, that she was able to remember five digits forward and three digits backward, that she correctly named the past five presidents, that she correctly named five large cities, and correctly subtracted 7's from 100. *Id*. at 19, 738. Furthermore, the ALJ considered a June 2016 progress note stating that Gina was alert, with normal dress and demeanor, good eye contact, speech, and judgment intact, and normal recent and remote memory. *Id.* at 19, 790. Similarly, the ALJ considered a January 2019 progress note indicating that Gina was alert, with normal dress and demeanor, good eye contact, speech, and judgment intact, and normal recent and

10

remote memory. *Id*. at 19, 1065. The ALJ also considered a June 2016 cognitive test showing a high score in attention, orientation, and memory. *Id.* at 19, 999. Second, in support of the ALJ's statement that a "2016 psychometric evaluation in November 2016 was normal and unremarkable," the ALJ cited to a Mayo Clinic psychometric testing that was negative for cognitive dysfunction. *Id.* at 19, 21, 706, 707. Third, in support for the ALJ's statement that Gina's "cognitive issues worsen with overstimulation or with increased activities," the ALJ considered Dr. Powell's note, based on Gina's description, that her post-concussion symptoms would come on when she was overstimulated or fatigued, and Dr. Castle's progress note in June 2018 indicating that Gina's symptoms increase with activity. *Id.* at 19, 21, 707, 996.

Additionally, the ALJ stated that he did not find the State agency consultants' opinions persuasive because "additional records were submitted at the hearing level in support of additional limitations." (R. 20-21). The ALJ's consideration of additional records is appropriate because "an ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). Further, the ALJ stated that he found Dr. Boyer's opinion unpersuasive because Dr. Boyer's based his opinion on Gina's subjective reports. The ALJ's consideration was adequate here as well because it is appropriate for an ALJ to discount medical opinion findings that are largely based on subjective complaints. *See Winsted*, 923 F.3d at 478.

Therefore, similar to the ALJ's treating physician analysis, the ALJ here sufficiently articulated how he considered the supportability and consistency of the psychological opinions. The ALJ evaluated the record and weighed the evidence. Yet, Gina asserts that the ALJ impermissibly played doctor because his medical opinion evaluation lacked meaningful analysis.

11

Doc. [14] at 11. However, Gina fails to indicate what specific medical finding the ALJ improperly interpreted at his own volition. Importantly, the ALJ has the "final responsibility" for assessing a claimant's RFC and "need not adopt any one doctor's opinion." *Fanta v. Saul*, 848 F. App'x. 655, 658 (7th Cir. 2021). As the Seventh Circuit instructed in *Vang v. Saul*, 805 F. App'x. 398, 401-02 (7th Cir. 2020), the ALJ must "consider all limitations supported by [the] record evidence" and "tie the record evidence to the limitations included in the RFC finding," but he need not match RFC conclusions item-by-item with medical opinions. The ALJ did what the regulations require, and he did not play doctor; he substantially evaluated the opinions as to supportability and consistency and determined that the medical opinions were unpersuasive while relying upon the objective medical records to craft the RFC.[3]

**B.    RFC**

Gina next argues that the ALJ's RFC determination failed to consider her limitations arising out of all of her impairments in combination. The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular

---

[3] Included in the last paragraph of Gina's challenge of the ALJ's medical opinion assessment is the assertion that the ALJ undermined Gina's symptoms. Gina argues that the ALJ improperly suggested that she exaggerated her symptoms when he considered that the record showed no hospitalizations lasting more than 24 hours, and when he considered Gina's daily activities. Doc. [14] at 10. To begin, Gina does not challenge the ALJ's subjective symptom analysis as patently wrong. Nevertheless, "an ALJ is not required to accept all of a claimant's subjective allegations, . . . [and] can consider[] the lack of inpatient care as evidence that [the claimant's] symptoms were not acute." *Charmaine R. v. Saul*, No. 18 C 7955, 2021 WL 83737, at *6 (N.D. Ill. Jan. 11, 2021). As such, the ALJ made no error in considering that that the record showed no hospitalizations. Further, the Seventh Circuit has said that it is permissible to "examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of [the claimant's] impairments [are] credible or exaggerated." *Morrison*, 806 F. App'x at 475. Gina makes the claim that the ALJ improperly considered her daily activities in various sections of her brief, yet the result is the same. That is, the ALJ properly considered Gina's daily activities "to see if they corroborated her pain claims, and [the ALJ] found that they did not." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). At no point did the ALJ impermissibly discuss her daily activities to demonstrate that Gina absolutely had the ability to work. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Montalto v. Berryhill*, No. 17 C 5976, 2019 WL 1405602, at *7 (N.D. Ill. Mar. 28, 2019). Thus, no error was made.

and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p. Again, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

Specifically, in challenging the RFC, Gina argues that the ALJ did not provide a more detailed assessment of the "B criteria" for purposes of the RFC. Doc. [14] a 13.[4] If a claimant "has a medically determinable mental impairment, then the ALJ must document that finding and rate the degree of functional limitation in four broad areas," which includes the category of "concentration, persistence, or pace." *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) (citing 20 C.F.R. § 404.1520a(c)(3)); *see also Davis v. Berryhill*, 723 F. App'x 351, 356 (7th Cir. 2018). These functional areas are known as the "B criteria." *Craft*, 539 F.3d at 674. The ALJ will rate a claimant's degree of limitation in the four broad areas according to the following five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates the degree of a claimant's limitations as "none" or "mild," the ALJ will "generally conclude that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities[.]" 20 C.F.R. § 404.1520a(d)(1). Yet, the ALJ "must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment[.]" SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

---

[4] Mixed in her RFC argument, Gina claims that the ALJ ignored Dr. Boyer's recommended limitations in functioning at Step 3 of the evaluation. Doc. [14] at 11-12. However, this argument is perfunctory and undeveloped because Gina does not claim that her impairments meet or equal a listing level severity at Step 3. For that reason, the argument is waived and the Court will not address this further. *Overton v. Saul*, 802 F. App'x 190, 193 (7th Cir. 2020); *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019).

In his step 2 analysis the ALJ found that Gina had: (1) a moderate limitation in understanding, remembering, and applying information; (2) a moderate limitation in concentrating, persisting, or maintaining pace; (3) and a moderate limitation in adapting or managing oneself. (R. 16-17). However, his analysis of Gina's neurocognitive disorder did not stop there. Contrary to Gina's claim that the ALJ did little more than make sweeping statements regarding her mental status examinations, the ALJ thoroughly considered Gina's medical records regarding her neurocognitive disorder and stated that Gina could perform light exertional work with mental limitations to account for her memory, concentration, and adaptation deficits. *Id.* at 19-21.

Further, in her RFC analysis the ALJ considered records showing that during a psychological evaluation, Gina had difficulty with memory and that her overall mental examinations showed full orientation, normal recent and remote memory, normal speech and judgment, adequate grooming, and normal concentration. *Id.* The ALJ also noted Gina's high score on a cognitive assessment. *Id.* Further, the ALJ considered an intelligence test where it was determined that Gina did not have any cognitive dysfunction. *Id.* The ALJ considered that Gina's symptoms worsen with over-exertion. *Id.* Next, the ALJ considered Gina's testimony that she experienced problems with balance and dizziness, that she is able to walk half a mile but has difficulty standing for long periods because of fatigue, that she has difficulty remembering things, that her family helps her cook meals and do housework, that she is able to wash dishes, do gentle yoga, shop for groceries, and volunteer at a nursing home, that she has no difficulty interacting with others, and that she does not see a mental health professional *Id.* at 18. Finally, to account for Gina's mental limitations including memory, concentration, and adaptation deficits, the ALJ determined that Gina could perform light work, but could only understand, remember, and carry

14

out simple and detailed tasks, with no fast-paced tasks, and can adapt to routine changes in a work environment. *Id.* at 17. The ALJ more than minimally articulated Gina's neurocognitive limitations in the RFC analysis.

Moreover, the ALJ's analysis here is distinguishable from other cases where the ALJ did not offer any analysis connecting the functional limitations found at step 2 with the RFC. *See Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *4 (N.D. Ill. Apr. 8, 2022) (remanding where the ALJ did not account for the claimant's functional limitations in her RFC analysis at all); *Barbara B. v. Kijakazi*, No. 20 CV 547, 2021 WL 5937766, at *2 (N.D. Ill. Dec. 16, 2021) (remanding where the ALJ formulated an RFC that lacked any "mental health restrictions and failed to explain why limitations were not warranted."). Here, the ALJ sufficiently discussed Gina's documentary and testimonial evidence regarding her neurocognitive disorder and included restrictions in the RFC based on her mental limitations.

Relatedly, Gina argues that the ALJ's RFC restrictions did not adequately account for Gina's limitations in concentration, persistence or pace. Doc. [14] at 14. Importantly, Gina does not accurately state the restrictions the ALJ found in the RFC. Gina claims that the ALJ limited her to "simple routine tasks with simple work-related decisions." Doc. [14] at 14. However, the ALJ's RFC restrictions actually stated that Gina can "understand, remember, and carry out simple and detailed tasks, with no fast-paced tasks," . . . and "can adapt to routine changes in a work environment." (R. 17). This is more specific than Gina has represented.

Furthermore, "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of task commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C(3) (2016). An ALJ need not use the specific words "concentration, persistence, and pace," so long as he

15

accounts for the totality of the claimant's limitations in the RFC. *Morrison v. Saul*, 806 F. App'x 469, 473–74 (7th Cir. 2020); *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). Generally, employing terms like simple, repetitive tasks in the RFC on their own is insufficient to present the claimant's limitations in CPP. *Winsted*, 923 F.3d at 477. This is because the terms "simple, routine, and repetitive tasks" refer to "unskilled work," which the regulations define as work that can be learned by demonstration in less than 30 days, but "the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work." *Lanigan v. Berryhill*, 865 F.3d 558, 565-66 (7th Cir. 2017); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citations omitted) ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.").

Nevertheless, terms like simple and repetitive tasks may still be employed to account for CPP limitations in certain cases. For example, in *Jozefyk v. Berryhill*, the Seventh Circuit affirmed the ALJ's RFC restrictions of simple, repetitive tasks and limited interactions with others to accounted for the claimant's moderate CPP limitations. 923 F.3d 492, 498 (7th Cir. 2019). The Seventh Circuit found that such language was sufficient because the record medical evidence showed mental limitations present only when the claimant was with other people or in a crowd, and because there was a lack of testimony and medical evidence supporting CPP limitations. *Jozefyk,* 923 F.3d at 498; *Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019).

Here, the ALJ specifically stated that the RFC limitations he found account for Gina's mental limitations to account for memory, concentration, and adaptation deficits. Regarding CPP, the ALJ's RFC here included restrictions for concentration and pace. *See Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) ("A moderate rating in maintaining concentration, persistence, and

16

pace means the claimant is so limited in *at least one of* those areas, not necessarily all three."). The remaining RFC restrictions of "understanding and remembering simple and detailed tasks and adapting to routine changes in a work environment" pertain to the moderate limitations the ALJ found in understanding, remembering, and applying information and in adapting or managing oneself. Therefore, the ALJ adequately accounted for the only CPP deficits that the ALJ found were supported by the record. *See Morrison*, 806 F. App'x at 473 (affirming an RFC limitation of "simple and detailed, one to five step instructions" where the ALJ determined that it "adequately accounted for the only deficits in concentration, persistence, and pace that the ALJ found supported by the record."). Moreover, Gina does not offer any additional restrictions that she believes should be included in the RFC. *See Recha v. Saul*, 843 F. App'x 1, 5 (7th Cir. 2021) (finding that the claimant did "not provided any other credible medical evidence indicating that his symptoms required additional RFC restrictions to account for CPP limitations beyond those included in the ALJ's decision."). Thus, nothing more is required in the RFC to account for Gina's CPP limitations.

## CONCLUSION

For the reasons set forth above, Gina's request for reversal and remand [14] is denied, the Acting Commissioner's motion for summary judgment [17] is granted, and the ALJ's decision is affirmed.

**SO ORDERED.**

Dated: May 9, 2022

                                                  Sunil R. Harjani
                                                  United States Magistrate Judge